**William BUTT, t/a Larkspur Texaco, on Behalf of Himself and All Others Similarly Situated, Plaintiffs,**

**v.**

**ALLEGHENY PEPSI–COLA BOTTLING COMPANY, and the Mid-Atlantic Coca-Cola Bottling Co., Inc., Defendants.**

Civ. A. No. 86–795–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

May 22, 1987.

Gary C. Byler, Virginia Beach, Va., Leonard Barrack, Gerald J. Rodos, Harold E. Kohn, Dianne M. Nast, Philadelphia, Pa., for plaintiffs.

Raymond W. Bergan, F. Whitten Peters, Williams and Connoly, Washington, D.C., Jerrold G. Weinberg, Debra C. Albiston, Norfolk, Va., for Allegheny Pepsi-Cola Bottling Co.

Kenneth H. Lambert, Williams, Worrell, Kelly and Greer, Norfolk, Va., Leonard A. Connell, Lee H. Simowitz, Peter B. Kenney, Jr., William R. Baker, III, Baker and Hostetler, Washington, D.C., for the Mid-Atlantic Coca-Cola Bottling Co., Inc.

## MEMORANDUM ORDER

MacKENZIE, District Judge.

Plaintiff William Butt ("Butt"), t/a Larkspur Texaco, filed this suit as a class action against defendant Allegheny Pepsi-Cola Bottling Company ("Allegheny") and The Mid-Atlantic Coca-Cola Bottling Company, Inc. ("Mid-Atlantic"). Plaintiff alleg-

es, on behalf of himself and all others similarly situated, that Allegheny and Mid-Atlantic conspired, by means of promotional-letter pricing agreements, to fix and raise soft-drink prices in violation of Section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq. Plaintiff seeks treble damages and injunctive relief.

This matter comes before the Court on plaintiff's amended motion for class certification under Fed.R.Civ.P. 23. The issue was argued before the Court on April 3, 1987.

Plaintiff is an individual who owns a service station in Virginia Beach, Virginia. He purchases small quantities of soft drinks from the defendants for vending machine sale to the traveling public.

Defendant Allegheny, a Maryland corporation, is a unit of PepsiCo Inc. Defendant Mid-Atlantic, a Delaware corporation, is affiliated with Coca-Cola. Both defendants sell soft drinks in the Norfolk and Richmond areas of Virginia.

■ Plaintiff seeks certification of the following class:

[A]ll individuals, proprietorships, partnerships, corporations, and other entities within the area served by the Norfolk and Richmond, Virginia divisions of defendants Allegheny Pepsi-Cola Bottling Company and The Mid-Atlantic Coca-Cola Bottling Co., Inc., who have, during the period February 1983 through September 1984, purchased soft drinks directly from either of the defendants, their respective subsidiaries, and affiliates. Excluded from the proposed Class are defendants Allegheny Pepsi-Cola Bottling Company and The Mid-Atlantic Coca-Cola Bottling Co., Inc., their respective subsidiaries and affiliates, and coconspirators. (Plaintiff's Amended Motion for Class Certification.)

Thus, plaintiff seeks to represent a class of customers including supermarkets, convenience stores, liquor stores, military commissaries, bars/taverns, drugstores, service stations, restaurants, schools, businesses, third-party vendors, and special events like fairs and sporting events. A number of these customers are chain stores.

For the reasons which follow, the Court deems it inappropriate to certify the proposed class.

### Rule 23(a)

The prerequisites to a class action are set forth in Rule 23(a), which provides as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

With respect to each requirement, the Court concludes as follows:

#### Numerosity

According to affidavits submitted by defendants, Allegheny had over 14,000 customers in 1983–84 who might qualify for membership in the proposed class; Mid-Atlantic had over 8000. Even if there exists a high degree of overlap between the two groups of customers, the total number would still exceed 14,000.

Defendants explained in their affidavits, however, that some chain stores (supermarkets, convenience stores, drugstores, service stations, and others) have multiple outlets, each of which is treated by defendants as a separate customer. Because each outlet may transact business on an individual basis with defendants, separate treatment appears appropriate for business-accounting purposes. For purposes of possible joinder in this law suit, however, a given chain store should be counted as one corporate customer, not as multiple outlets. Consequently, the actual number of customers who may qualify as separate mem-

bers of the proposed class is somewhat fewer than 14,000.

Although neither plaintiff nor defendants indicate precisely what this number is, the Court can take judicial notice of the fact that hundreds, and probably thousands, of entities in Richmond and Norfolk bought Pepsi and Coke products directly from the defendants in 1983–84. Therefore, the Court has no difficulty in finding that the proposed class is so numerous that joinder would be impracticable. The Rule 23(a)(1) requirement of numerosity is thus satisfied.

### Commonality

Rule 23(a)(2) requires that there be a question of either law or fact common to the members of the class. A number of courts have found that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present questions adequately common to class members to satisfy this commonality requirement. *See, e.g., Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 37–38 (E.D.Va.1981).

All the claims in the present suit do, in fact, relate to an alleged conspiracy on the part of defendants to fix and raise soft-drink prices by means of promotional-letter pricing agreements. These common claims are sufficient to satisfy the commonality requirement. This is not to say, however, that common issues predominate over individual questions peculiar to individual class members. The question of predominance will be addressed with reference to Rule 23(b)(3).

### Typicality

Rule 23(a)(3) provides that a class action is proper only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." It has been held that

> ... typicality refers to the nature of the claims of the class representative and not necessarily to the specific facts from which the case arose.... Where the class representatives' claims are such that they will have to prove the same elements as the remainder of the class, then typicality should be found notwith-

standing factual differences between various members of the class.

*Brown v. Cameron-Brown Co.,* 92 F.R.D. at 38 (cites omitted). The typicality requirement can be met in an antitrust case even though there are many products sold at varied prices and conditions, essentially because all class members will seek to prove the same elements: that there was a conspiracy to fix prices in violation of the antitrust laws, that the prices were fixed pursuant thereto, and that the plaintiffs purchased products at prices which, as a result of the conspiracy, were higher than they would have been in a free market. *See* 3 H. Newberg, Newberg on Class Actions § 18.10 (2d ed. 1985), and cases cited therein.

In the present antitrust suit, all class members would seek to prove the elements of price fixing reiterated above. Because the claims asserted by the class representative are virtually the same as the claims of the class, the Court is satisfied that the typicality requirement has been met.

### Adequacy of Representation

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. In evaluating this requirement, courts generally look for an absence of potential conflict between the representative and other class members, and assurances of a vigorous prosecution by competent attorneys. *Brown v. Cameron-Brown Co.,* 92 F.R.D. at 40. *See also* 3 H. Newberg, *supra* § 18.12 *et seq.*

In the present case, the Court finds no evidence of conflicts existing between plaintiff and other class members that might impinge on this suit. Further, the Court finds that plaintiff's attorneys are qualified, experienced in the field of antitrust class actions, and already in the process of pursuing this suit with vigor. The requirement of adequate representation has therefore been met.

In their briefs, defendants did not question plaintiff's ability to represent the class adequately. In oral argument, however, defendants raised several issues.

First, Allegheny questioned Butt's financial wherewithal to sustain the costs of the litigation, notably the cost of sending notice to class members. Transcript of Oral Argument at 23–24. The Court notes that normally the financial responsibility of the class representative is not examined, unless the class consists of an enormous number of members. *Haywood v. Barnes,* 109 F.R.D. 568, 580 (E.D.N.C.1986); *Sanderson v. Winner,* 507 F.2d 477, 479–80 (10th Cir.1974) *(per curiam ), cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975). Here, the class consists of considerably fewer than 14,000 members, to whom notice can be provided without exorbitant expense. Furthermore, there was no concrete evidence presented that Butt is either unwilling or unable to finance the litigation. Accordingly, the Court rejects the argument that Butt is an inadequate class representative because of his financial position.

Second, Mid-Atlantic questioned whether, or to what extent, Butt was actually affected by the alleged price-fixing conspiracy. While discussing the issue of the conspiracy's impact on individual class members, Mid-Atlantic asserted that Butt himself does not remember the basis on which he purchased products from either defendant, but that Mid-Atlantic's records indicate he purchased their products on the basis of a permanent discount, and not on the basis of the promotional-letter prices that are the subject of this suit. Transcript of Oral Argument at 26–27. If it develops that Butt did not, in fact, purchase products from one or both of the defendants on the basis of promotional-letter prices, then Butt could not have suffered the alleged injury at their hands. He would therefore be unable to maintain a suit against one or both of the defendants, on his own behalf or on behalf of others. Such a circumstance, if true, would render Butt an inadequate representative of the class's claims. However, the underlying issue being asserted here is standing, which is not a class issue, but rather a requirement that must be met by every plaintiff, whether the suit is brought individually or on behalf of a class. *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). *See generally* 3 H. Newberg, *supra* § 18.16. Even if evidence had been presented to the Court on this issue, the certification stage is an inappropriate time to make a determination as to the named plaintiff's standing to sue. *Brown v. Cameron-Brown Co.,* 92 F.R.D. at 37. Accordingly, the Court makes no finding as to Butt's standing, but rather accepts his claims as asserted for purposes of determining class certification. On this basis, the Court finds that the four prerequisites of Rule 23(a) are satisfied.

### *Rule 23(b)(3)*

The proponent of class certification has the burden of establishing the right to such certification under Rule 23. *Windham v. American Brands, Inc.,* 565 F.2d 59, 64 n. 6 (4th Cir.1977) (citing cases). Rule 23 requires that all of the prerequisites of part (a) be met, plus the requirements of at least one of the subdivisions of part (b). In this case, plaintiff seeks class certification pursuant to Rule 23(a) and 23(b)(3). Whereas the Court has found that plaintiff met this burden with respect to Rule 23(a), it finds that plaintiff has failed to meet the burden with respect to Rule 23(b)(3).

An action may be maintained as a class action under Rule 23(b)(3), if:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In the present case, the Court concludes that the common issue of antitrust violation does not predominate over individualized issues of injury and damages, that class action treatment is not superior to other available remedies, and that, under the required standards of proof of the plaintiff's action, class certification would render the litigation unmanageable.

*Predominance*

The Fourth Circuit has noted that there are three essential elements in every private antitrust action: (1) violation of the antitrust law, (2) direct injury to the plaintiff from such violation, and (3) damages sustained by the plaintiff. *Windham,* 565 F.2d at 65.

By way of background, the Court notes that the violation alleged in plaintiff's civil complaint is based on the criminal indictment returned in October 1986 against Armand Gravely, Allegheny's Richmond division manager. The complaint states that defendants conspired to fix and raise soft-drink prices by:

(a) participating in meetings and telephone conversations to discuss and agree upon promotional letter prices of soft drinks;

(b) agreeing to set certain minimum soft drink promotional letter prices and to increase promotional letter prices of certain soft drinks manufactured by defendants;

(c) instructing subordinate employees of defendants to meet with representatives of each other to exchange promotional letters and other information relating to prices;

(d) issuing promotional letters reflecting pricing agreements between defendants;

(e) agreeing to adhere to promotional letter prices; and

(f) making efforts to enforce pricing agreements between defendants.

Amended Complaint at 7.

At trial in February 1987, the government offered evidence of the existence and effects of this alleged conspiracy, and a jury found Gravely guilty of violating Section 1 of the Sherman Act. *United States v. Gravely,* Crim. No. 86–102–N (E.D.Va. 1987). Although plaintiff must still prove defendants' violation of the antitrust law in the context of the present suit, plaintiff has at least pleaded a violation that would be common to all customers who purchased soft drinks pursuant to defendants' promotional-letter prices.

Plaintiff has not, however, pleaded injuries that are necessarily common to all class members, or pleaded damages that can be established on a class-wide basis.

*(i) Injury*

Both the plaintiff's complaint and the evidence presented at the *Gravely* trial center on alleged price-fixing with relation to promotional-letter offers. Promotional letters, however, constitute only one of many pricing policies and practices utilized by defendants. Although pricing techniques vary between the two defendants, it can be said that customers could purchase products from both defendants on the basis of several prices other than the accused promotional-letter price; *e.g.,* the wholesale price, a permanent discount, spot discounts.

Plaintiff argues that it is not necessary for customers to have purchased through the promotional-letter marketing method to be injured by the alleged price-fixing agreement. Plaintiff contends that an agreement to fix prices through one marketing method necessarily has a supracompetitive impact on the prices charged through all other marketing methods. Plaintiff is certainly not precluded from proving this assertion. The affidavits of defendants' experts and the evidence at the *Gravely* trial, however, do not necessarily point to the conclusion that all prices were affected by the alleged conspiracy. The Court finds that, at this stage of the proceedings, plaintiff has only succeeded in showing that purchases made through the promotional-letter marketing method were affected by the alleged agreement.

Proof of injury, then, must begin with a customer-by-customer assessment of which

purchases were made under promotional-letter offers. The relevant number of customers for this purpose is roughly 14,000 for Allegheny, and 8000 for Mid-Atlantic. The number of individual purchases that would have to be examined is estimated at 700,000 for Allegheny, and 450,000 for Mid-Atlantic. Because defendants lack detailed computerized records for many, if not most, transactions during the relevant time period, much of this information would have to be gleaned from thousands of truck tickets. *See* Affidavits of Defendants' Experts.

It could well develop that this customer-by-customer examination would reveal that a portion of the proposed class never suffered injury at all. Although the complaint in this suit alleges a conspiracy with regard to promotional-letter pricing only, plaintiff's proposed class consists of *all* purchasers within the Norfolk and Richmond areas who bought soft drinks from defendants within the designated time period. At this point, the Court is not persuaded that purchases other than promotional-letter purchases were affected by the alleged conspiracy. Consequently, even if plaintiff proves the alleged conspiracy, he will have a difficult, if not impossible, task to prove class-wide injury. Rather, it appears that injury is an individualized matter that will have to be proved by a detailed customer-by-customer and transaction-by-transaction analysis.

In essence, this is the standing issue alluded to earlier. Customers who did not purchase through promotional-letter offers probably did not sustain injury from the alleged conspiracy, and thus lack standing to sue. *See generally Windham*, 565 F.2d at 71 n. 38; 3 H. Newberg, *supra* § 18.16. This risk of non-injury is especially high with regard to low-income customers like the named plaintiff. Apparently, high-volume customers like supermarket chains purchased soft drinks primarily through promotional-letter offers; however, low-volume customers like the plaintiff, who himself only purchased soft drinks for the vending machines at his gas station, were likely to have opted for other pricing ar-

rangements in some or all of their transactions. The problem is further exacerbated by the fact that computerized records are particularly lacking for low-volume customers. *See* Affidavits of Defendants' Experts. The related issues of injury and standing thus appear to be unresolvable on a class-wide basis, especially with regard to the thousands of low-volume customers in the proposed class.

Even where it is shown that particular customers purchased soft drinks pursuant to a promotional letter, injury may still not have occurred. Evidence at the *Gravely* criminal trial suggested that, because the conspirators had cheated and deviated from their agreement, the conspiracy may have been ineffective. *See Gravely* Transcript in Attachment 4 of Mid-Atlantic's Memorandum of March 2, 1987. Whereas proof of the existence of a price-fixing conspiracy is sufficient to support a criminal conviction, it is not sufficient to support recovery in a civil suit. In a private antitrust action, "[t]he gravamen of the complaint is not the conspiracy; the crux of the action is injury, individual injury." *Windham*, 565 F.2d at 66. In the present suit, the possibility that the parties ignored their alleged agreement and continued to engage in their normal discounting practices introduces enormous additional complications to determining whether individual members of the proposed class were in fact injured.

In view of these factors, the Court finds that proof of injury is an individual matter that varies by customer, by transaction, and by products purchased. Thus, with regard to Allegheny, determination of injury would require a detailed examination of 700,000 transactions made by 14,000 customers to purchase 91 possible combinations of product flavors and sizes of containers. With regard to Mid-Atlantic, it would require examination of 450,000 transactions made by 8000 customers to purchase 71 possible combinations of product flavors and sizes. Because many of these data are not computerized, such examination would involve manual processing of thousands of truck tickets.

Through this complex examination of data, it would have to be determined whether each class member actually purchased on the basis of promotional-letter prices and, if so, what products. It is clear that not all class members made all purchases on this basis, so the inquiry is an individualized rather than a general class-wide one. Further, since many promotional offers included certain conditions (*e.g.*, advertising; buying certain quantities, flavors or packages), it might also be necessary to ascertain whether the purchasers who chose to participate in a given promotion complied with the conditions and actually paid the promotional-letter price. In the face of evidence that defendants might have "cheated" on their alleged agreement, it would be important to assess whether, and on what basis, the promotional-letter prices were further discounted. Proof of injury would also involve determination of whether the purchaser would have received a discount in the absence of an agreement, and of what price the purchaser would have paid absent a promotional-letter pricing conspiracy.

Based on information submitted to the Court by the parties, the foregoing factors appear to be necessary areas of inquiry in order to determine the issue of injury. The Court does not summarize these factors in an attempt to delineate fully the logistics of proof, but merely to underscore the tremendous difficulties involved in determining injury in this case.

### (ii) Damages

It appears that the plaintiff will also be unable to establish damages by common proof on a class-wide basis. In this case, the issue of proof of damages is directly linked to the proof of injury, and is subject to the same difficulties of class-wide determination as reiterated above. Even if plaintiff were able to prove his assertion that all purchases—not just those based on promotional-letter offers—were affected by the conspiracy, the difficulties in determining damages would persist and would preclude the Court's finding that the class should be certified. The Court finds that computation of damages would be a complex, highly individualized task, imposing an intolerable burden on the judicial system, especially where, as here, the case will be tried to a jury. *See Windham*, 565 F.2d at 70.

■ Plaintiff's expert states, in very general terms, that statistical methods exist by which individual damages may be calculated, and plaintiff asserts that a workable formula can be developed. Defendants, however, present detailed and persuasive evidence that such is not the case. The Court finds that plaintiff has failed to show that damages can be calculated other than through a detailed and individualized examination of hundreds of thousands of transactions. Where, as here, there is substantial evidence of serious problems in calculating damages, the Court should not certify the class merely on the assurance that a solution will be found. *Windham*, 565 F.2d at 70. In this action, the Court is not persuaded that a formula now exists or could be developed by which class-wide damages could be ascertained.

In summary, although this suit involves allegation of a common antitrust violation, it also involves highly individualized issues of both injury and damages. The individualized issues so overwhelm the common ones that Rule 23(b)(3)'s predominance requirement is not met.

### Superiority

Rule 23(b)(3) requires not only that common questions predominate, but also that a class action be superior to other forms of adjudication.

In the present case, a substantial portion of the product was purchased by a relatively small number of customers. In fact, Mid-Atlantic's affidavit indicates that 20 corporate customers accounted for as much as 50% of its business in Richmond and Norfolk. These high-volume customers have sufficient economic interest to pursue their own suits against defendants if Mr. Butt, alone, decides he does not. Given the problems inherent in the proposed class

action, such individual suits, which may be regarded as "test cases," would constitute a superior legal procedure. *See Windham,* 565 F.2d at 69. The "test case" approach could well accomplish the same results as a class action "without involving the court in a morass of individual claims that will bog the court system down interminably." *Id.*

Accordingly, the Court finds that the proposed class action fails to satisfy the superiority requirement of Rule 23(b)(3).

*Manageability*

The Fourth Circuit has indicated that "the difficulties likely to be encountered in the management of a class action" are to be considered in making findings on predominance and superiority. *Windham,* 565 F.2d at 65 n. 7. The Court's findings in the present case do, indeed, reflect that this class action is deemed to be unmanageable because of the complexities of proving individual injury and damages.

The appropriate standard, as described by the Fourth Circuit, is:

> [W]here the fact of injury and damage breaks down in what may be characterized as "virtually a mechanical task," "capable of mathematical or formula calculation," the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability. On the other hand, where the issue of damages and impact does not lend itself to such a mechanical calculation, but requires "separate 'mini-trial'[s]" of an overwhelming large number of individual claims, courts have found that the "staggering problems of logistics" thus created "make the damage aspect of [the] case predominate," and render the case unmanageable as a class action.

*Windham,* 565 F.2d at 68 (cites omitted). The present case falls into the "unmanageable" category thus described. Proof of both injury and damages is highly individualized and complex. Plaintiff has not succeeded in showing that injury can be proved by common evidence, or that damages can be computed by a mathematical formula. Rather, it appears that a class-action suit could well require an overwhelming and unmanageable number of mini-trials, with juries, in order to resolve the issues of injury and damages.

The complex injury and damages issues in the present case are similar to those in *Windham v. American Brands, Inc.,* 68 F.R.D. 641 (D.S.C.1975), *rev'd,* 539 F.2d 1016 (4th Cir.1976), *rev'd en banc,* 565 F.2d 59 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). The plaintiffs in *Windham,* approximately 20,000 South Carolina tobacco growers, alleged that defendants, tobacco buyers and the United States Secretary of Agriculture, conspired to fix prices at South Carolina tobacco auction markets. The tobacco was classified by government inspectors into as many as 161 grades. 68 F.R.D. at 653. The District Court found, however, that purchases of lower-graded tobacco might not have been influenced by the alleged conspiracy. *Id.* Sales of this non-standardized product were made to different categories of purchasers, not all of whom were proper parties to the suit, at various warehouses in South Carolina. *Id.* at 647 and 653. The prices that prevailed at the various warehouse auctions varied from day to day, from auction to auction, from grade to grade, and even among grades. 565 F.2d at 63. The claims could not be proved by formula calculation. *Id.* at 66. The district judge's finding that a class action would be unmanageable in this situation, 68 F.R.D. 641, was affirmed by the Fourth Circuit sitting *en banc.* 565 F.2d at 59.

The *Windham* scenario is analogous to the present one. Here, we have at least 14,000 customers who purchased a combined total of approximately 172 flavors and sizes of product in some 1,150,000 transactions within the state of Virginia. The transactions were highly individualized, and it appears likely that not all transactions were influenced by the alleged conspiracy. For this reason, each class member's standing to sue must be assessed by examination of the individual transactions. Prices for the various sizes and flavors of

product varied from day to day, from customer to customer, with essentially comparable customers on occasion paying different prices on the same day for the same products. *See* Affidavit of Allegheny's Expert. It does not appear that damages can be adequately calculated by mathematical formula. Thus, a class action in this situation would be unmanageable, just as it was in *Windham.*

In closing, the Court notes that plaintiff's motion for class action certification was fully briefed, in accordance with local rules of court, prior to oral argument on April 3, 1987. After argument, however, the Court has been barraged with an almost daily array of new arguments and supplementary memoranda filed by the plaintiff. In view of the time-honored proposition that litigation must reach a point of finality, and that the legal efficacy of these post-argument efforts are certainly up to challenge, the Court considers these untimely and unauthorized submissions to be inappropriate, and has therefore ignored them.

---

Two additional motions have been filed in this suit since the Court heard oral argument on the class certification issue. Plaintiff moved for leave to depose more than five non-party witnesses. Defendant Mid-Atlantic moved the Court to consolidate *Mom's Inc., t/a The Jewish Mother v. Allegheny Pepsi-Cola Bottling Co. and The Mid-Atlantic Coca-Cola Bottling Co., Inc.* with the present action. The Court foresees that the parties' positions with relation to these motions may change in view of today's class-certification determination. Accordingly, the Court will hold these motions in abeyance until the parties have time to assess the present Order's impact, if any, on their pending motions.

---

In summary, the Court finds that plaintiff's motion for class certification should not be granted. Although plaintiff has met his burden of fulfilling the prerequisites of Rule 23(a), he has failed to meet this burden with regard to Rule 23(b)(3). Contrary to Rule 23(b)(3)'s requirements, plaintiff has not shown that common issues predominate over individual issues, that a class action is superior to other modes of litigation, or that this suit would be manageable as a class action. On each of these factors, the Court has found the opposite to be true.

Accordingly, for the reasons stated, plaintiff's motion for class certification is DENIED. Motions regarding additional discovery and consolidation are held in abeyance. All parties are DIRECTED to advise the Court *in writing* of their respective positions regarding the disposition of these motions within *thirty (30) days* of the date of this Order.

It is so ORDERED.