**CONTINENTAL ORTHOPEDIC APPLIANCES, INC., New York Orthopedic, Stahl Surgical Supply Inc., United Orthopaedic Appliances, Inc., A–1 Surgical and Medical Supplies, Inc., Archfame, Inc., Ortho Surgical, J.C. Orthopedic Co., Inc., Day Drug & Orthopedic Treatment Facility, Orthotic Consultants, Inc., James Case Enterprises, Inc., Certified Orthopedic, Prothotic Labs, Elmont Pharmacy & Surgical, Foot Molds, Inc., and A Personal Touch Garment Corporation, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**HEALTH INSURANCE PLAN OF GREATER NEW YORK, INC., Advanced Orthopedic Technologies, Inc., A wholly owned subsidiary of Novacare Prosthetics and Orthotics, Inc., Novacare Prosthetic and Orthotics, Inc., and Arimed Orthotics, Prosthetics, and Pedorthics Inc., Andrew H. Meyers, Matthew Mironis, Steven Mironis, Bernard Neeck and Anthony L. Watson, Defendants.**

No. CV 95–4541.

United States District Court,
E.D. New York.

Dec. 4, 2000.

2000), Fed.R.Civ P. 60(b), *see Frederick v. United States,* No. 00–CV– 354 (N.D.N.Y. Dec. 19, 2000), and now Fed.R.Crim P. 35(a), to no avail.

Steven L. Wittels, Armonk, NY, Jeremy Heisler, New York City, Meister Seelig & Fein, LLP, New York City (Scott N. Gelfand, of counsel), for plaintiffs.

Stroock & Stroock & Lavan, LLP, New York City (Bruce H. Schneider, Albert Appel, of counsel), for Health Insurance Plan of Greater New York, Inc., Bernard Neeck and Anthony Watson, defendants.

Herrick, Feinstein, LLP, New York City (Patrick Bradley, of counsel), for Advanced Orthopedic Technologies, Inc., Novacare Prosthetic and Orthotics, Inc., and Andrew H. Meyers, defendants.

Dowe, Capetanakis & Preite, Brooklyn, NY (Charles Capetanakis, of counsel), for Arimed Orthodics, Prosthetics and Pedorthics, Inc., Matthew Mirones and Steven Morines, defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is the fourth formal decision issued in this case. This putative class action seeks redress for alleged violations of the federal and state antitrust laws arising from the defendants' alleged unlawful and conspiratorial bid-rigging, price fixing, and termination and exclusion of orthotic and prosthetic ("O & P") providers within the five boroughs of New York City and the surrounding six counties of Nassau, Suffolk, Westchester, Rockland, Orange and Putnam (the "Eleven County Region"), by the defendants Health Insurance Plan of Greater New York, Inc. ("HIP"), Advanced Orthopedic Technologies,

Inc. ("Advanced"), Novacare Orthotics and Prosthetics, Inc. ("Novacare"), Arimed Orthotics, Prosthetics and Pedorthics, Inc. ("Arimed"), and five individual officers and executives of the corporate defendants, beginning on or about July 31, 1995, and continuing to date. Presently before the Court is the plaintiffs' motion for class certification.

## I. *BACKGROUND*

The Court has previously described the facts in this case in its three published opinions, *Continental Orthopedic Appliances, Inc. v. Health Insurance Plan of Greater New York, Inc.*, 40 F.Supp.2d 109 (E.D.N.Y. 1999) ("*Continental III*"), *Continental Orthopedic Appliances, Inc. v. Health Insurance Plan of Greater New York*, 994 F.Supp. 133 (E.D.N.Y.1998) ("*Continental II*"), *Continental Orthopedic Appliances, Inc. v. Health Insurance Plan of Greater New York*, 956 F.Supp. 367 (E.D.N.Y.1997) ("*Continental I*"), and incorporates the factual background set forth in those decisions by reference.

In brief, this lawsuit arises from a decision made by HIP, a health management organization ("HMO"), to enter into two exclusive contracts for O & P service with Advanced/Novacare and Arimed. On or about July 31, 1995, Advanced/Novacare and Arimed allegedly contracted with HIP to become HIP's exclusive "preferred providers" of O & P services in the Counties of Kings, Queens, Nassau, Suffolk, and Richmond (collectively, the "Five County Region" or the "Lower County Region"). On or about February 13, 1997, HIP extended exclusive contracts to Advanced/Novacare and Arimed to provide O & P services for all HIP members in the Counties of New York, Bronx, Westchester, Orange, Rockland, and Putnam (collectively, the "Upper County Region"). As a result of these contracts, certain O & P providers, including the named plaintiffs and putative class members, no longer receive HIP's business in the Eleven County Region. According to the plaintiffs, HIP had 20% of the HMO market in the Eleven County Region and served approximately 50% of the Region's O & P patients who belonged to an HMO.

The plaintiffs allege that the above-described conduct constitutes an antitrust violation because it represents an illegal conspiracy among HIP, Advanced/Novacare and Arimed in restraint of trade of health care delivery in the United States and the State of New York. Specifically, the plaintiffs claim that the defendants restrained trade in two separate product markets: (1) the market for O & P health care services to HIP's HMO patients in the Eleven County Region; and (2) the market for O & P health care services to all HMO patients in the Eleven County Region.

The Second Amended Complaint sets forth four antitrust claims, two based on federal law and two based on state law. The first and second claims allege structural and tacit conspiracies, respectively, in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The third and fourth claims allege companion antitrust conspiracy claims based on the New York State Donnelly Act, N.Y.Gen.Bus.Law § 340, et. seq.

Presently before the Court is the plaintiffs' motion for certification of a class of businesses in New York State that (1) were engaged primarily in the business of providing O & P services in the Eleven County Region; (2) were terminated by HIP as participating health care providers on or about July 31, 1995, or February 13, 1997; and (3) were excluded from becoming such a HIP O & P provider after HIP awarded the exclusive contracts to Advanced/Novacare and Arimed. The defendants contend that class certification is inappropriate because common questions regarding causation in fact and the amount of damages do not predominate; the named plaintiffs' claims are not typical of the class; and the named plaintiffs have conflicting interests that would prevent them from fairly and adequately representing the class.

## II. *DISCUSSION*

### A. Standards for Class Certification

When determining the propriety of class certification, the inquiry is whether the requirements of Federal Rule of Civil Procedure 23 have been met. *See Eisen v. Car-*

*lisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The plaintiffs bear the burden of demonstrating that every requirement has been satisfied, *see Caridad v. Metro–North Commuter RR,* 191 F.3d 283, 291 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000); *In re Visa Check/Mastermoney Antitrust Litig.,* 192 F.R.D. 68, 79 (E.D.N.Y.2000) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)); *In re Alcoholic Beverages,* 95 F.R.D. 321, 324 (E.D.N.Y. 1982), and the court must accept the allegations in the complaint as true. *See Visa Check/Mastermoney,* 192 F.R.D. at 79; *In re Playmobil Antitrust Litig.,* 35 F.Supp.2d 231, 236 (E.D.N.Y.1998). Although the court may look beyond the allegations set forth in the complaint, its resolution of a class certification motion may not become "a preliminary inquiry into the merits" of the case. *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140, *Visa Check/Mastermoney,* 192 F.R.D. at 79; *Potchin v. Prudential Home Mortgage Co., Inc.,* 1999 WL 1814612 (E.D.N.Y.1999); *Playmobil,* 35 F.Supp.2d at 239. " 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *Visa Check/Mastermoney,* 192 F.R.D. at 79 (quoting *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140).

Pursuant to Federal Rule of Civil Procedure 23(a), a class action may be initiated if four requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

In addition, a class action may be "maintained" only if one of the tests of Rule 23(b) is satisfied. Fed.R.Civ.P. 23; *see Visa Check/Mastermoney,* 192 F.R.D. at 78. In this case, the plaintiffs argue that the proposed class satisfies the requirements of Rule 23(b)(3), which requires:

> *that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members,* and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3) (emphasis supplied).

**B. Predominance of Common Questions of Law or Fact—Rule 23(a)(2) and Rule 23(b)(3)**

The common question requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) overlap. *See* Newberg, 4 Newberg on Class Actions § 18.26, p. 18–82 to 18–83 (3rd ed.1992). However, the predominance requirement is far more stringent than the common question requirement. Thus, even though a case may present common questions of law and fact, those questions may not predominate, and class certification therefore must be denied. *See* Fed. R.Civ.P. 23(a)(2), (b)(3); *In re Transit Co. Tire Antitrust Litig.,* 67 F.R.D. 59, 73 ("Even though it may be found that class members may have claims based on a common set of facts which may give rise to liability, it may be that defenses, damages, and the standards by which they are measured may differ substantially.").

■■■ To succeed in an antitrust action, a plaintiff must establish (1) an antitrust violation; (2) "impact" or "fact of damage" (causation); and (3) the amount of damages. *See American Bearing Co., Inc. v. Litton Indus., Inc.,* 729 F.2d 943, 948 (3d Cir.1984); *Playmobil,* 35 F.Supp.2d at 240–41; *Uniondale Beer Co., Inc. v. Anheuser–Busch, Inc.,* 117

F.R.D. 340, 342 (E.D.N.Y.1987). To initiate a class action, a plaintiff must demonstrate that all three of these elements can be proven by common evidence. *See Playmobil*, 35 F.Supp.2d at 241 (citing *Glictronix Corp. v. American Tel. & Tel. Co.*, 603 F.Supp. 552, 586 (D.N.J.1984)); *see also Windham v. American Brands, Inc.*, 565 F.2d 59, 65–66 (4th Cir.1977) ("The statute gives a right of action only to the extent that one has been 'injured in his business or property by reason of anything forbidden in the anti-trust laws.' "); *In re Master Key Antitrust Litig.*, 528 F.2d 5, 12, n. 11 (2d Cir.1975).

Thus, courts frequently will certify a class in an antitrust case that involves allegations of conspiracy or monopoly, because questions regarding the scope and extent of the conspiracy or monopoly are likely to predominate. *See In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 (S.D.N.Y.2000); *Playmobil*, 35 F.Supp.2d at 241; *Uniondale Beer*, 117 F.R.D. at 342. Similarly, class certification is usually granted in a price-fixing case, because causation is established by proof that a class member purchased the goods, and damages, though more individualized, may be proven by a simple mathematical formula. *See Auction Houses*, 193 F.R.D. at 167–68; *Alcoholic Beverages*, 95 F.R.D. at 326; *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 36–37 (S.D.N.Y.1977).

Often in private antitrust cases, class certification will turn on the amount of individualized proof necessary to establish injury. *See Daniels v. Amerco*, 1983 WL 1794 *6 (W.D.N.Y.1983). Differences in the amount of damages sustained by individual class members usually will not defeat class certification. *See Playmobil*, 35 F.Supp.2d at 242; *Glictronix*, 603 F.Supp. at 586 (damages may be established individually). On the other hand, where demonstrating the fact of damage requires more individualized proof, courts will decline class certification. *See, e.g., Butt v. Allegheny Pepsi–Cola Bottling Co.*, 116 F.R.D. 486, 491 (E.D.Va.1987) (holding that proof of injury is individual matter varying by customer where plaintiffs allege price-fixing related to a promotional letter offer, but even those customers who purchased soft drinks pursuant to the promotional letter may not have been injured); *Glictronix*, 603 F.Supp. at 586 (holding that fact of damage could not be established on common basis when individualized assessment of market position of each class member would be necessary to determine whether member would or would not have increased actual sales and profits in absence of protective connecting arrangement tariff, and when individualized analysis would be necessary to determine whether companies that left the market suffered any damage); *Daniels*, 1983 WL 1794 *6 (denying classification because plaintiffs would have to prove that each dealership was terminated illegally, and because proof of conspiracy to monopolize would establish injury only for a small part of the class).

█ This Court is of the view that this case presents common questions of law and fact in satisfaction of Rule 23(a)(2). The plaintiffs allege a conspiracy to (1) restrain trade of health care delivery in the United States and in New York; (2) avoid HIP's contractual obligation to pay for patients' O & P services; (3) provide substandard O & P services to HIP's patients or to withhold such services entirely; (4) fix prices of O & P services; and (5) drive out competing O & P providers. The plaintiffs further assert that on or about February 13, 1997, Advanced/Novacare and Arimed had exclusive contracts with HIP to provide O & P services to all of HIP's patients in the Eleven County Region. The plaintiffs contend that as a result of these contracts, the remaining O & P providers in the Region, who had previously been providing O & P services to HIP members, were foreclosed from continuing to provide those services. The plaintiffs also assert that the defendants' conduct restrained ·trade, fixed prices, and drove competitors out of (1) the market for O & P health care services for HIP's HMO patients in the eleven counties and (2) the market for O & P health care services for all HMO patients in the eleven-county region, because HIP possessed 20% of the HMO market in that region, and because 50% of the patients in the region, who used an HMO, were members of HIP. Given these allegations of an antitrust conspiracy, the Court finds that

common questions of law and fact exist regarding the antitrust violation. *See Auction Houses,* 193 F.R.D. at 164; *Playmobil,* 35 F.Supp.2d at 240 ("[C]lass actions are particularly appropriate for antitrust litigation concerning price-fixing schemes because price-fixing presumably subjects purchasers in the market to common harm."); *Alcoholic Beverages,* 95 F.R.D. at 324 ("Antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy,'" (quoting *In re Sugar Industry Antitrust Litig.,* 73 F.R.D. 322, 335 (E.D.Pa. 1976))).

■ Although this case presents common questions regarding the antitrust violation, the inquiry does not end there. Rule 23 requires the Court to consider closely the issues of injury, damages, and defenses to determine whether the common questions predominate. *See* Rule 23(b)(3); *Windham,* 565 F.2d at 65–66; *Transit Co.,* 67 F.R.D. at 73–74. In order to satisfy the antitrust injury requirement, the plaintiffs must establish that the injuries alleged would not have occurred "but for" the defendants' antitrust violations. *See Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 41 (2d Cir.1986) ("Consequently, an essential element in plaintiffs' claim is that the injuries alleged would not have occurred but for [defendant's] antitrust violation."), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987); *City of Pittsburgh v. West Penn. Power Co.,* 147 F.3d 256, 269 (3d Cir.1998) (holding that plaintiff could not show significant threat of injury from defendants' antitrust violation because it could not show that it had lost anything that would have existed but for defendants' actions); *USAirways Group, Inc. v. British Airways PLC,* 989 F.Supp. 482, 489 (S.D.N.Y.1997) ("In order to satisfy the antitrust injury requirement, the alleged violations of the antitrust laws must be the but-for cause of the injury."); *see generally Irvin Indus. Inc. v. Goodyear Aerospace Corp.,* 803 F.Supp. 951, 954 (S.D.N.Y.1992) ("[A] treble damage antitrust plaintiff has the additional burden of identifying the exact manner in which its injury can, in fact, be traced to that part of defendant's activity which constituted an antitrust violation.");

*Erie Conduit Corp. v. Mapa,* 102 F.R.D. 877, 879 (E.D.N.Y.1984) ("[F]ailure to satisfactorily prove that a plaintiff is injured by reason of the defendant's antitrust violations is sufficient to defeat the antitrust claims.").

As noted, in cases involving allegations of a pure price-fixing conspiracy, common questions of law and fact generally predominate on all issues. *See Playmobil,* 35 F.Supp.2d at 239; *Uniondale Beer,* 117 F.R.D. at 342; *Alcoholic Beverages,* 95 F.R.D. at 326. Here, both the complaint and the plaintiffs' brief refer to this case as one involving price-fixing. However, the focus of the plaintiffs' allegations is on a contract, or contracts, whereby Advanced/Novacare and Arimed became HIP's exclusive O & P providers in the Eleven County Region. The plaintiffs allege that HIP granted the exclusive contract to Advanced/Novacare and Arimed without first receiving competitive bids and without notifying the plaintiffs who had contracts with HIP at the time. The plaintiffs further contend that the defendants' exclusive contract reduced competition in the market and deprived the plaintiffs of customers, thereby indirectly inflating the prices for O & P products in the area. This case, therefore, does not present price-fixing in its usual guise but alleges an array of anti-competitive conduct having an indirect effect on, among other things, the general price level of O & P products. *See Transit Co. Tire,* 67 F.R.D. at 73 ("The instant litigation does not fit into the category of the 'antitrust model' where all legal and factual issues relating to liability are uniformly related to all those allegedly harmed."). Accordingly, proof of causation and damages is more complex than simply showing that the plaintiffs purchased an item—sufficient proof to show causation in a typical price-fixing case.

At this stage of the proceedings, the Court finds that, with reasonable certainty, the plaintiffs cannot offer common proof establishing that but for the antitrust violation, they would not have suffered their injuries. In this litigation, neither the services or their distributors are standard. Rather, the class includes businesses of all sizes, each of which was in a different financial position at the time of the alleged violation. Thus, the al-

leged damages suffered by the O & P providers could be the result of any number of factors. Each business had a different contract with HIP to provide different types and amounts of services for HIP patients. Similarly, each putative class member's business with HIP constituted a different percentage of its overall business. *See Glictronix Corp. v. American Telephone and Telegraph Co.,* 603 F.Supp. 552 (D.N.J.1984) (finding that fact of damage could not be established on a common basis where individualized assessment of market position of each member would be necessary to determine whether the member would or would not have increased sales and profits in absence of protective connecting arrangement).

In addition, to succeed in demonstrating that their injuries were caused by the defendants' alleged antitrust violations, each plaintiff will have to prove that it would have been able to submit a bid that was competitive, in accordance with HIP's guidelines, and would have been considered by the insurance company. *See id.* Thus, where, as here, the injury is predicated on the individual relationship between the distributor and the insurance company, individual issues, such as causation, predominate and preclude the maintenance of a class action.

The plaintiffs rely on *Irvin Indus. Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241 (2d Cir.1992), for the proposition that, to establish causation, each plaintiff does not have to show that it would have been considered for the HIP contract if HIP had conducted a legal bidding process. In *Irvin,* the Court of Appeals held that the possibility that the defendant may have submitted a lawful bid "cannot in and of itself negate causation as a matter of law," *id.* at 245, and that "under the facts of this case the possibility that [the plaintiff] would have lost the contract anyway is too speculative to negate, as a matter of law, the causal link shown by [the plaintiff]." *Id.* at 246. That holding does not affect this Court's decision, because the facts and procedural posture of *Irvin* required the Court of Appeals to delve into the issue of antitrust causation on the merits and in the context of a summary judgment motion. Here, however, the Court cannot address the question of causation on the merits, because the issue is being examined in the context of a motion for class certification. Indeed, it is not this Court's opinion that the plaintiffs cannot prove causation. Rather, the Court finds only that the plaintiffs cannot prove causation on a classwide basis, and, therefore, that individualized facts predominate.

■ In determining whether common issues of law or fact predominate, the Court cannot ignore the issues of fact which are likely to arise in defense of the class claims. *See Transit Co. Tire,* 67 F.R.D. at 73. It appears likely that the defendants will attempt to introduce evidence showing that all but two of the plaintiffs failed to make a demand to submit a proposal or sought to submit a proposal, and that, therefore, all but two of the plaintiffs' actions may fail. The defendants will also attempt to defeat the causal link between each plaintiffs' alleged damages and the alleged antitrust violation. For instance, the defendants claim that, even if given the opportunity, some of the plaintiffs would not accept an exclusive or semi-exclusive contract with HIP, because such a contract violates the plaintiffs' business philosophy. The defendants further contend that they will introduce evidence showing that other plaintiffs, if awarded an exclusive or semi-exclusive contract with HIP, would be unable to supply the amount of O & P services that HIP required.

Further, unlike price-fixing cases in which the amount of damages is susceptible to common proof using a formula or economic model, proof of the amount of damages in this case would necessarily be individualized. Here, damages are directly linked to causation, and are, therefore, subject to the same difficulties of class-wide determination described above. The amount of damages suffered by each plaintiff will depend on a variety of factors, including the types of services and devices the business provided; the geographic location of the business; the number of HIP patients the business served; and the percentage of profit that originated from the contract they no longer maintained with HIP. In addition, the defendants intend to introduce evidence that some plaintiffs never attempted to mitigate their damages. The

Court finds that the computation of damages in this case would not be mechanical but rather would be a complex, highly individualized task, requiring separate "mini-trials" of a large number of claims. *See Windham,* 565 F.2d at 68; *Butt,* 116 F.R.D. at 492.

In sum, although this suit involves allegations of a common antitrust violation, it also involves highly individualized issues of both injury and damages. The individualized issues so overwhelm the common ones that the predominance requirement of Rule 23(b)(3) is not met. Accordingly, the motion for class certification is denied. However, the plaintiffs are not barred from renewing the motion, if after discovery has progressed, they are able to surmount the barriers to class certification which form the basis for the denial of the instant motion.

### III. *CONCLUSION*

Having reviewed the parties submissions and afforded them the opportunity to present oral argument, it is hereby

**ORDERED,** that the plaintiffs' motion for class certification is **DENIED,** without prejudice; and **it is further**

**ORDERED,** that the allegations of class action are stricken from the second amended complaint.

**SO ORDERED.**