CONTINENTAL ORTHOPEDIC APPLIANCES, INC., New York Orthopedic, Stahl Surgical Supply, Inc., United Orthopaedic Appliances, Inc., A–1 Surgical And Medical Supplies, Inc., Archfame, Inc., Ortho Surgical, Inc., J.C. Orthopedic Co., Inc., Day Drug & Surgical, Rocklyn Surgical Supply Company, Orthopedic Treatment Facility, Orthotic Consultants, Inc., James Case Enterprises, Inc., Certified Orthopedic, Prothotic Labs, Elmont Pharmacy & Surgical Supply, Inc., Kings Pharmacy & Surgical, Foot Molds, Inc., and A Personal Touch Garment Corporation, on behalf of themselves and all other similarly situated, Plaintiffs,

v.

HEALTH INSURANCE PLAN OF GREATER NEW YORK, Advanced Orthopedic Technologies, Inc., and Arimed Orthotics, Prosthetics, and Pedorthics, Inc., Defendants.

No. CV 95–4541 (ADS).

United States District Court,
E.D. New York.

Feb. 26, 1997.

Law Offices of Scott N. Gelfand, New York City (Scott N. Gelfand, of counsel), for Plaintiffs.

Stroock & Stroock & Lavan, New York City (Bruce H. Schneider, Faith A. Kaminsky, of counsel), for Defendant Health Insurance Plan of New York, Inc.

Herrick, Feinstein, LLP, New York City (Susan T. Dwyer, Joshua F. Scheier, of counsel), for Defendant Advanced Orthopedic Technologies, Inc.

Charles Capetanakis, Brooklyn, NY, for Arimed Orthotics, Prosthetics and Pedorthics, Inc.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This is an antitrust case in a now fertile field for litigation, the Health Maintenance Organization ("HMO") arena. All three defendants move to dismiss all eight claims in the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that none of the claims state a valid cause of action.

### I. *BACKGROUND*

This lawsuit arises from a decision made by defendant Health Insurance Plan of New York ("HIP"), an HMO, to enter into certain contracts with defendant Advanced Orthopedic Technologies, Inc. ("Advanced") and defendant Arimed Orthotics, Prosthetics and Pedorthics, Inc. ("Arimed"). These contracts, entered into in August 1995, apparently provide that Advanced and Arimed were to be "preferred providers" in regard to orthotic and prosthetic ("O&P") equipment to be supplied to HIP's customers. Implicit in the entering into of these contracts is that former O&P providers, including the plaintiffs, would no longer be the recipients of HIP business.

According to the complaint, HIP provided the following memorandum, which it delivered to each terminated provider, upon inquiry:

The Health insurance Plan of Greater New York (HIP) has recently entered into agreements with Advanced Orthopedic Technology and Arimed whereby these two vendors will be preferred providers of O&P services for HIP members in the Queens–Long Island/Brooklyn and Staten Island Regions.

Any cases which have already been referred to your company will continue to be monitored by the HIP Alternate Care Utilization Management Department. However, any new cases as of August 1, 1995 will be referred to one of the preferred providers. If you have any questions or issues with regard to the above change, please feel free to contact the HIP Alternate Care Utilization Management Department at (212) 630–8302.

HIP would like to thank you for your past service to HIP members and appreciates your anticipated cooperation with this transition.

The parties variously describe the O&P products as orthotic and prosthetic equipment and orthopedic and prosthetic equipment. No definition of orthotic being provided, the Court found a definition in Stedman's Medical Dictionary, Fourth Unabridged Lawyer's Edition 996 (1976) as "the science that deals with the making and fitting of orthopaedic appliances." Apparently, prior to August 1995, the plaintiffs and more than 300 other O&P providers did business with HIP customers. After these contracts were consummated, the defendants Advanced and Arimed were to be the exclusive O&P providers, effectively terminating the business of the plaintiffs with HMO customers.

The complaint alleges that, for various business reasons, including an HIP decline in the HMO market share,

HIP ... conspire[d] with Defendants Advanced and Arimed to enter into an exclusive arrangement O&P services to HIP enrollees in [New York City, Nassau and Suffolk Counties] *at a negotiated price level below HIP's pre-August 1, 1995 price level for the 335 O&P providers with whom HIP used to do business.* This negotiated price level would translate into a *20% across the board cost savings for HIP.*

(Complaint ¶ 61) (emphasis in original). The plaintiffs contend that, as a result of the exclusive provider contracts with Advanced and Arimed, they and other O&P providers were "summarily terminated." (Complaint ¶ 62).

The complaint sets forth eight antitrust claims, four based on federal law and four based on state law. The first and second

claims are based on "structural" and "tacit" conspiracies in violation of Section 1 of the Sherman Anti–Trust Act, 15 U.S.C. § 1. The fifth and sixth claims are similar antitrust conspiracy claims based on the New York State Donnelly Act, N.Y. Gen. Bus. Law § 340, *et. seq.*

The third and fourth claims, based on Federal law, allege monopolization, and the seventh and eighth companion state law claims, have been withdrawn by the plaintiffs. *See* Plaintiff's Memorandum of Law in Opposition at 3:

> Finally, after reviewing both the authorities cited by the Defendants in their respective memoranda and independently reviewing the governing law in the Second Circuit, the Class Plaintiffs have decided not to pursue their Sherman Act Section 2 Monopoly claims in this action, and, accordingly, withdraw the Third, Fourth, Seventh and Eighth Claims for Relief of the Complaint. This means that the only claims Plaintiffs wish to pursue their Sherman Act Section 1 claims and related claims under State law.

## II. *DISCUSSION*

### A. *Rule 12(b)(6) Standards*

As to the standards guiding the Court's determination of the defendants' motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief'". *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (quoting from *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also International Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 71 (2d Cir.1995). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken". *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d –42, 47 (2d

Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

In this type of motion, it is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the court must accept the allegations of the complaint as true, *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Industrial Buildings, Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Doe v. City of New York,* 15 F.3d 264, 266 (2d Cir.1994). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–36, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

The Court is also mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f).

In addition, in antitrust cases, in particular, it must appear on the face of the complaint that plaintiff could prove no set of facts to sustain recovery. *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413 (5th Cir.1980). The complaint need only allege sufficient facts to state the elements of injury from an act prohibited by the antitrust laws. *Newman v. Universal Pictures,* 813 F.2d 1519 (9th Cir.1987), *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988). On the other hand, for the court to grant this kind of motion, a defendant in an antitrust case must meet a more stringent standard because the proof is often in the hands of the alleged conspirators, and the plaintiff may need an opportunity to discover the facts necessary to withstand the motion. *H.R.M,*

*Inc. v. Tele–Communications. Inc.,* 653 F.Supp. 645 (D.Colo.1987); *Hughes Auto v. Mid–Atlantic Toyota Dist.,* Inc., 543 F.Supp. 1056 (D.Md.1982).

It is within this framework that the Court addresses the present motion to dismiss the complaint as to all three defendants.

### B. *The Defendants' Contentions*

The defendants contend that (1) no facts are alleged which would support a finding of an express conspiracy, or a "structural" conspiracy, or a "tacit" conspiracy; (2) the plaintiffs failed to allege the required "antitrust injury," in that there is no allegation of any injury to "competition"; (3) there is no allegation of a "relevant product market"; and (4) the plaintiffs United Orthopaedic Appliances, Inc., Stahl Surgical Supply, Inc., Archfame, Inc., J.C. Orthopedics Co., Inc. and James Case Enterprises, Inc. lack standing to sue. In opposition, among other contentions, the plaintiffs contend that a liberal construction of the plaintiffs' class action complaint "strongly" mitigates against its dismissal at the pleading stage.

### C. *Has the Plaintiff Sufficiently Alleged the Required "Antitrust Injury"?*

■ Section 1 of the Sherman Act states that "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states ... is declared to be illegal." 15 U.S.C. § 1. If the plaintiffs establish such a conspiracy, they must prove that the agreement constituted an unreasonable restraint of trade either *per se* or under the "rule of reason." Conduct considered *per se* illegal is present only in a limited type of case. *See Continental T.V. Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). As stated in *Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc.,* 996 F.2d 537, 542, 543 (2d Cir.1993), such cases include horizontal and vertical price-fixing, *see United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 218, 60 S.Ct. 811, 841, 84 L.Ed. 1129 (1940); *Dr. Miles Medical Co. v. Park & Sons Co.,* 220 U.S. 373, 405, 31 S.Ct. 376, 383, 55 L.Ed. 502 (1911); division of a market into territories, *see United States v. Topco Assocs.,* 405 U.S. 596, 609, 92 S.Ct. 1126, 1134,

31 L.Ed.2d 515 (1972); and certain tying arrangements, *see Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 9, 104 S.Ct. 1551, 1556, 80 L.Ed.2d 2 (1984).

■ In most antitrust cases the plaintiffs must prove an antitrust injury under the "rule of reason." The plaintiffs must prove "that the challenged action had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *Capital Imaging,* at 543; *see, e.g., Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 343–44, 110 S.Ct. 1884, 1893–94, 109 L.Ed.2d 333 (1990); *Austin v. McNamara,* 979 F.2d 728, 739 (9th Cir.1992).

■ In the Court's view, the plaintiffs have sufficiently alleged that the defendants' conduct has had a substantial harmful effect on competition. This effect can include an increase in prices in the industry and deterioration of the quality of services to the public. *See U.S. Healthcare, Inc. v. Healthsource, Inc.,* 986 F.2d 589 (1st Cir.1993); *Key Enterprises of Delaware, Inc. v. Venice Hospital,* 919 F.2d 1550 (11th Cir.1990). The plaintiffs allege a harmful effect on competition and inferior quality at paragraph 4:

4. Worse, however, is the harm such conduct has had, and will continue to have, upon the general public, including: (1) rather than go to one of the convenient, neighborhood providers with whom they have cultivated long-term relationships and grown comfortable in the very sensitive and private O&P fittings marketplace, such as the Class Plaintiffs before their termination, HIP enrollees requiring orthotic and/or prosthetic services, who are inherently less mobile and capable of traveling anything beyond short distances, now are being forced by the Defendants to make significantly longer and more difficult journeys to one of the few facilities in the Seven Counties operated by Defendants Advanced and Arimed; (2) then, when and if enrollees finally arrive, upon information and belief, neither Arimed nor Advanced are either board certified or equipped with the necessary laboratory facilities to provide enrollees with adequate care; (3) HIP enrollees are suffering from

conditions of artificial shortage on O&P services as Advanced and Arimed have been overwhelmed by the flood of business now directed toward them exclusively, and patients are now receiving, hasty, shoddy, substandard or incomplete care as a result; and (4) consumers are suffering from a lack of choice and quality as HIP and its lone provider, Advanced, carry only limited O&P products of inferior quality to those previously available to consumers through the Class Plaintiffs before their termination and exclusion.

Also, facts in support of a claim of a harmful effect on competition are alleged in paragraphs 82 and 83:

82. Then, when and if enrollees finally arrive, upon information and belief, neither Advanced nor Arimed is Board certified nor are they equipped with full service laboratories to permit them to provide the same standard of care that enrollees received prior to August 1, 1995. This harm is multiplied geometrically, since O&P devices often require repeated replacement and adjustment.

83. Worse yet, upon information and belief, Advanced and Arimed have been overwhelmed by the flood of business now directed toward them exclusively, and patients are now receiving, hasty, shoddy, substandard or incomplete care as a result. As well, consumers are suffering from a lack of choice and quality as HIP and its lone provider, Advanced, carry only limited O&P products of inferior quality to those previously available to consumers through the class plaintiffs before the termination.

Accordingly, the defendants' motion to dismiss the antitrust claim on the ground that the plaintiffs have failed to allege the required "antitrust injuries," is denied.

### D. Do Plaintiffs United, Stahl, Archfame, J.C. Orthopedic and James Case Lack Standing?

■ Section 4 of the Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ..." 15 U.S.C. § 15. To have standing, a plaintiff must be a competitor, participant, supplier or consumer in the rele-

vant market. *Alpha Shoe Service v. Fleming Companies,* 849 F.2d 352, 354 (8th Cir.) *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988); *Eagle v. Star–Kist Foods, Inc.,* 812 F.2d 538, 540 (9th Cir.1987) (quoting from *Bhan v. NME Hospitals, Inc.,* 772 F.2d 1467, 1470 (9th Cir.1985)) ("[t]he injured party [must] be a participant in the same market as the alleged malefactors").

■ The plaintiffs allege that "as of August 1, 1995, HIP has made only a *single* O&P provider within its network for the entire Seven County region, excepting the Borough of Manhattan, and, upon information and belief, portions of the Borough of Bronx—both of which will, pursuant to HIP's own internal documentation soon go to an exclusive provider as well [1]." Footnote 1 states that "Plaintiffs reserve the right to add, as party defendants, the exclusive provider or providers awarded the Manhattan and Bronx regions by HIP."

The Plaintiffs United Orthopedic Appliances, Archfame, Inc. and James Case Enterprises, Inc. have their principal offices in Manhattan, and plaintiffs Stahl Surgical Supply Inc. and J.C. Orthopedic Co., Inc. do business in the Bronx. (Complaint ¶¶ 5, 9, 11, 13, 17). Each of these plaintiffs is, according to the Complaint itself, located in an area not affected by HIP's agreements with Advanced Orthopedic and Arimed. Indeed, plaintiffs acknowledge this by taking the highly unusual "precaution" of purporting to "reserve[ ] the right to add, as party defendants, the exclusive provider or providers awarded the Manhattan and Bronx regions by HIP." (Complaint ¶ 54 n. 1). In the Court's view, the plaintiffs United, Stahl, Archfame, J.C. Orthopedic and James Case Enterprises are not participants in the same market as the alleged wrongdoers and lack standing to sue. Accordingly, the defendants' motion to dismiss the complaint as to the plaintiffs United Orthopaedic Appliances, Inc. Stahl Surgical Supply, Inc., Archfame, Inc., J.C. Orthopedic Co., Inc. and James Case Enterprises, Inc. is granted, without prejudice.

### E. Has a Conspiracy Been Sufficiently Pleaded?

■ Dismissals at the pleading stage of an antitrust claim should be granted very

sparingly, prior to giving the plaintiffs ample opportunity for discovery. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); *Poller v. Columbia Broadcasting, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). However, conclusory allegations which merely recite the litany of antitrust will not suffice. This Court has the power and the obligation to insist upon some specificity in pleading before allowing a potentially extensive factual controversy to proceed. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983).

■ In this case, viewing the complaint with the liberal eye required in compliance with the precedents, the Court finds that the plaintiffs failed to set forth facts sufficient to state a conspiracy within Section 1 of the Sherman Act. A perusal of the complaint reveals only conclusory allegations of a conspiracy. In fact, the only factual bases for the "conspiracy" are the agreements by HIP to terminate the plaintiffs as O&P providers and, instead, replace them with the defendants Advanced and Arimed. There are no facts set forth in support of a claim of a conspiracy in restraint of trade other than the replacement of the plaintiffs and the exclusive provider contracts with the two defendants.

■ Generally, a health maintenance organization has the right to determine the companies it chooses to recommend to its customers, if it does not do so as a result of an illegal conspiracy to restrain trade. Generally, an HMO "has the right to recommend or refuse to recommend whatever company it likes, so long as it does so independently." *See, e.g., Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 760, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984). In a somewhat similar situation, the Second Circuit enunciated this rule in *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,* 602 F.2d 1025, 1030 (2d Cir. 1979):

> The Sherman Act does not condemn every business decision as a § 1 conspiracy merely because it is the product of an agreement between two persons or entities legally capable of conspiring. A manufacturer may announce the terms under which he will market his product and deal only with those customers who agree to abide by the terms. *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Similarly, a manufacturer is free to choose the type of mechanism through which he will distribute his goods and can designate certain sales representatives as his exclusive agents. [citations omitted]. We have held that: "[w]here a manufacturer simply decides on his own to substitute one dealer for another, and cuts off the former dealer, his decision to sell exclusively to a new dealer does not amount to an antitrust 'conspiracy' with the latter, [citations omitted], even though the manufacturer has agreed with the new dealer to transfer patronage to him and to terminate sales to the former dealer."

*Bowen v. New York News, Inc., supra,* 522 F.2d at 1254.

This is equally true where a manufacturer abandons his entire distribution system in favor of another system, *Knutson v. Daily Review, Inc., supra,* 548 F.2d at 805, whether it be to improve distribution, maximize profits or for some other legitimate competitive reason. *Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126 (2d Cir.1978) (en banc) (Mansfield, J. dissenting on other grounds).

A § 1 conspiracy will arise, however, where in addition to substituting one distribution system for another the manufacturer attempts to exact some collateral anti-competitive advantage. *Bowen v. New York News, Inc., supra,* 522 F.2d at 1254. *See also Knutson v. Daily Review, Inc., supra,* 548 F.2d at 804–05. *Id. See also Contractor Utility Sales Co., Inc. v. Certain–Teed Products Corp.,* 638 F.2d 1061, 1075 (7th Cir.1981); *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 841 (2d Cir.1980).

If the Court were to rule that these facts alone could state a valid Section 1 antitrust conspiracy cause of action, then every such exclusive contract under similar facts, could be the basis for a Section 1 conspiracy anti-

trust action. That the plaintiffs' complaint alleges a conspiracy based only on the facts that the defendant HIP terminated the plaintiff and chose two other companies as preferred providers, is clear from a reading of the complaint. For example in paragraph 2, the plaintiffs allege "as set forth herein, the foregoing conduct (the termination of plaintiffs and the 'preferred provider' contract with Advanced and Arimed) constitutes a conspiracy". Also, in paragraph 66 it is stated, "Thus on August 1, 1995, HIP wilfully and deliberately conspired with Defendants Advanced and Arimed to literally trample all competition for HIP O&P business in the seven counties." Simply stated, this factual situation is not enough to allege an antitrust Section 1 conspiracy.

■ Accordingly, defendants' motion to dismiss the remaining first, second, fifth and sixth claims are dismissed for failure to sufficiently allege a conspiracy. However, this does not end the matter. The plaintiffs have alternatively, in this contingency, requested leave to serve an amended complaint.

The Federal Rules of Civil Procedure provide that "leave [to amend a pleading] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 287 (2d Cir. 1974). According to the Supreme Court, only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Richardson Greenshields Sec., Inc. v. Mui–Hin Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987).

The Second Circuit reiterated that "[t]he district court has discretion whether or not to grant leave to amend, and its discretion is not subject to review on appeal except for abuse of discretion." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (quoting 3 *Moore's Federal Practice* ¶ 15.08[4], at 15–16 2d ed.1992) (footnotes omitted); *see Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). "In exercising its discretion, the district court is required to heed the command of Rule 15(a)

to grant leave to amend 'freely . . . when justice so requires.'" *Ruffolo*, 987 F.2d at 131 (quoting Fed.R.Civ.P. 15(a)).

The Court does not find that an opportunity by the plaintiffs to amend the complaint so as to sufficiently allege a conspiracy would be futile. Accordingly, the plaintiffs are granted leave to serve and file an amended complaint within thirty (30) days of the date of this decision.

With regard to amendment of the complaint, the plaintiff is cautioned about perfunctory or cosmetic changes. The Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber*, 1990 Transfer Binder, Fed. Sec. L. Rep. (CCH), ¶ 95,287 (S.D.N.Y.1990):

> [I]t has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. an amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.

### F. Other Contentions

The Court has considered the defendants' other contentions and finds them to be without merit. In addition, the Court finds the opinion in *The Orthopedics Studio Inc. v. Health Insurance Plan of Greater New York, Inc.*, 1996 WL 84503 (E.D.N.Y.) to be distinguishable in that the alleged conspiracy here *is* between separate entities and the plaintiffs in this case have sufficiently alleged an "antitrust injury."

### III. CONCLUSIONS

Having reviewed the parties' submissions, and for the reasons set forth above, it is hereby

ORDERED that the third, fourth, seventh and eighth claims are dismissed with prejudice; and it is

ORDERED that the defendants' motions to dismiss the complaint as to plaintiffs Unit-

ed Orthopaedic Appliances, Inc., Stahl Surgical Supply, Inc., Archfame, Inc., J.C. Orthopedics Co., Inc. and James Case Enterprises, Inc. are granted without prejudice, based on lack of standing; and it is further

ORDERED that the defendants' motions to dismiss the remaining causes of action, namely, the first, second, fifth and sixth claims, based on antitrust conspiracy are dismissed for failure to sufficiently plead a conspiracy, with leave to the plaintiffs to serve and file an amended complaint within thirty (30) days from the date of this Decision and Order; and it is further

ORDERED that, in all other respects, the defendants' Rule 12(b)(6) motion, is denied.

SO ORDERED.