CONTINENTAL ORTHOPEDIC APPLIANCES, INC., New York Orthopedic, Stahl Surgical Supply Inc., United Orthopaedic Appliances, Inc., A–1 Surgical and Medical Supplies, Inc., Archfame, Inc., Ortho Surgical, J.C. Orthopedic Co., Inc., Day Drug & Orthopedic Treatment Facility, Orthotic Consultants, Inc., James Case Enterprises, Inc., Certified Orthopedic, Prothotic Labs, Elmont Pharmacy & Surgical, Foot Molds, Inc., and A Personal Touch Garment Corporation, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

HEALTH INSURANCE PLAN OF GREATER NEW YORK, inc., Advanced Orthopedic Technologies, Inc., A wholly owned subsidiary of Novacare Prosthetics and Orthotics, Inc., Novacare Prosthetic and Orthotics, Inc., and Arimed Orthotics, Prosthetics, and Pedorthics Inc., Andrew H. Meyers, Matthew Mironis, Steven Mironis, Bernard Neeck and Anthony L. Watson, Defendants.

No. CV 95–4541(ADS).

United States District Court, E.D. New York.

Feb. 7, 1998.

---

Steven L. Wittels, Armonk, NY, Jeremy Heisler, Scott N. Gelfand, New York City, for Plaintiffs.

Stroock & Stroock & Lavan L.L.P., Health Insurance Plan of Greater New York, Inc., Bernard Neeck and Anthony Watson, New York City, Bruce H. Schneider, and Claude G. Szyfer, of counsel, Herrick, Feinstein L.L.P., Advanced Orthopedic Technologies, Inc., Novacare Prosthetic and Orthotics, Inc., and Andrew H. Meyers, New York City, Joshua F. Scheier, and Susan T. Dwyer, of counsel, Capetanakis & Preite, Arimed Orthodics, Prosthetics, and Pedorthics, Inc., Matthew Mirones and Steven Mirones, Brooklyn, NY, Charles Capetanakis, of counsel, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This putative class action seeks redress for alleged violations of the federal and state antitrust laws arising from the defendants' alleged unlawful and conspiratorial bid-rigging, price fixing, and termination and exclusion of all orthotic and prosthetic ("O & P") providers within the five boroughs of New York City and the surrounding six Counties of Nassau, Suffolk, Westchester, Rockland, Orange and Putnam, by the defendants Health Insurance Plan of Greater New York, Inc. ("HIP"), Advanced Orthopedic Technologies, Inc. ("Advanced"), Arimed Orthotics, Prosthetics and Pedorthics, Inc. ("Arimed"), and five individual officers and executives of the corporate defendants, beginning on or about July 31, 1995, and continuing to date. Presently before the Court is the defendants' motion to dismiss the plaintiffs' First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

A. *Factual background*

This lawsuit arises from a decision made by HIP, a health management organization ("HMO"), to enter into certain exclusive contracts for O & P service with Advanced and Arimed, which became effective on August 1, 1995 and February 13, 1997. Orthotics is the design, fabrication, fitting, and supervised use of custom-made braces and other devices that provide external support to treat musculoskeletal disorders. Prosthetics is the design, fabrication, and fitting of custom-made artificial limbs for patients who have lost limbs as a result of traumatic injuries, diabetes, cancer, mastectomy, vascular disease, or congenital disorders. The facts set forth below are taken from the First Amended Complaint.

Effective August 1, 1995, Advanced and Arimed are alleged to be "preferred providers" in regard to O & P services provided to HIP's customers in the Counties of Queens, Nassau, Suffolk, Brooklyn, and Staten Island (collectively, the "Five County Region" or the "Lower County Region"), notwithstanding that these providers, combined, allegedly had at most six outlets in these counties. As a result of these contracts, the former O & P providers, including the plaintiffs, no longer will be the recipient of HIP's business in the Lower County Region. Simultaneously, each and every O & P provider who had previously attempted to become a HIP provider was forever foreclosed from becoming a member in the HIP network comprising of the Lower County Region.

HIP allegedly did not notify any of the O & P providers of their termination or, upon information and belief, the affected enrollees. However, apparently some time later, HIP provided the following memorandum, which it delivered to each terminated provider who inquired as to its termination:

> The Health Insurance Plan of Greater New York (HIP) has recently entered into agreements with Advanced Orthopedic Technology and Arimed whereby these two vendors will be preferred providers of O & P services for HIP members in the Queens–Long Island/Brooklyn and Staten Island Regions.

> Any cases which have already been referred to your company will continue to be monitored by the HIP Alternate Care Utilization Management Department. However, any new cases as of August 1, 1995 will be referred to one of the preferred providers. [I]f you have any questions or issues with regard to the above change[,] please feel free to contact the HIP Alter-

nate Care Utilization Management Department at (212) 630–8203.

HIP would like to thank you for your past service to HIP Members and appreciates your anticipated cooperation with this transition.

First Amended Complaint ("Am.Compl.") ¶ 78.

The plaintiffs allege that their termination and exclusion occurred despite their background, experience, training, competence, adherence to the ethics of the profession, good reputation, and the ability to work with others. All plaintiffs were Board-certified pursuant to the American O & P Association ("AOPA") and the New York State O & P Association ("NYOPA"). Nevertheless, only one entity among the plaintiffs was allegedly afforded an opportunity to submit bids to HIP prior to their termination.

On or about February 13, 1997, HIP disclosed that it had "extended" exclusive contracts to Advanced and Arimed to provide O & P services for "all HIP New York members" in the Counties of New York (i.e., Manhattan), Bronx, Westchester, Orange, Rockland, and Putnam (collectively, the "Upper County Region"). These territories were conferred to Advanced and Arimed even though in most counties comprising the Lower and Upper County Regions, Advanced and Arimed allegedly had only one or two sites, and in some counties, had no O & P sites at all to service HIP's customers. As a result of these contracts, the former O & P providers, including the plaintiffs, would no longer be the recipient of HIP's business in the Upper County Region. Simultaneously, each and every O & P provider who had previously attempted to become a HIP provider was forever foreclosed from becoming a member in the HIP network in the Upper County Region.

The plaintiffs allege that, once again, HIP did not timely notify any of the affected O & P providers of their termination or, upon information and belief, the affected enrollees. Rather, HIP prepared a memorandum dated February 13, 1997, which mirrored the language of the July 31, 1995 termination letter, stating that HIP had "recently extended" its "agreements" with Advanced and Arimed

"whereby these two vendors will be preferred providers of orthotic and prosthetic services for all HIP New York Members." Am. Compl. ¶ 84. In a later memorandum dated March 15, 1997, which upon information and belief, was provided only to HIP personnel on a distribution list, HIP detailed the partitioning of the Upper County Region among Advanced and Arimed. Upon information and belief, HIP gave no explanation to its personnel for the sudden "extension" of coverage of the Upper County Region to Advanced and Arimed.

The plaintiffs allege that their termination and exclusion occurred despite their background, experience, training, competence, adherence to the ethics of the profession, good reputation, and the ability to work with others. All plaintiffs were Board-certified pursuant to the AOPA and NYOPA. Nevertheless, none of the plaintiffs were allegedly afforded an opportunity to submit bids to HIP prior to their termination.

The plaintiffs allege that "HIP, Advanced and Arimed agreed to carry out a plan whereby HIP would sharply cut its own costs by virtually eliminating the supply of O & P services to HIP enrollees, which services HIP had contracted to provide for its patients." Am. Compl. ¶ 49. The defendants allegedly

combined, conspired and agreed to (1) terminate all HIP's O & P providers, except Advanced and Arimed ("A & A"); (2) channel all HIP's O & P patients to A & A; (3) artificially restrict the supply of O & P services to HIP's patients; (4) fix the prices A & A would charge for providing O & P services; and (5) rig the bidding process for HIP's O & P providers so that A & A would be the only ones chosen as HIP's preferred O & P providers.

Am. Compl. ¶ 68.

The First Amended Complaint sets forth four antitrust claims, two based on federal law and the remaining based on state law. The first and second claims allege structural and tacit conspiracies, respectively, in violation of section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1. The third and fourth claims allege companion antitrust conspiracy

claims based on the New York State Donnelly Act, N.Y.Gen.Bus.Law § 340, *et. seq.*

### B. *Procedural history*

The plaintiffs' original complaint alleged structural and tacit conspiracies and monopolization pursuant to federal and state law. By a Memorandum Decision and Order dated February 26, 1997, the Court dismissed with prejudice all claims of monopoly and dismissed the complaint without prejudice, as to the plaintiffs United Orthopaedic Appliances, Inc., Stahl Surgical Supply, Inc., Archfame, Inc., J.C. Orthopedics Co., Inc., and James Case Enterprises, Inc., based on lack of standing. *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.*, 956 F.Supp. 367 (E.D.N.Y. 1997) (the "Order" or "*Continental*"). In addition, the Court dismissed without prejudice, the federal and state law conspiracy claims, finding the conspiracy allegations insufficient to state a claim. The Court held that the plaintiffs had successfully pleaded all elements of a section 1 violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, except the allegations of a conspiracy. The Court stated that the complaint asserted

> only conclusory allegations of a conspiracy. In fact, the only factual bases for the "conspiracy" are the agreements by HIP to terminate the plaintiffs as O & P providers and, instead, replace them with the defendants Advanced and Arimed. There are no facts set forth in support of a claim of a conspiracy in restraint of trade other than the replacement of the plaintiffs and the exclusive provider Contracts with the two defendants.

*Continental*, 956 F.Supp. at 373. The Court observed that if it

> were to rule that these facts alone could state a valid Section 1 antitrust conspiracy cause of action, then every such exclusive contract under similar facts could be the basis for a Section 1 conspiracy antitrust action. That the plaintiffs' complaint alleges a conspiracy based only on the facts that the defendant HIP terminated the plaintiff and chose two other preferred providers, is clear from a reading of the complaint.

*Id.* at 373–74. Rather than dismissing the plaintiffs' claims with prejudice, the Court granted the plaintiffs an opportunity to replead their claims but cautioned against squandering this opportunity by making "perfunctory or cosmetic changes." *Id.* at 374. The Court denied the defendants' motion to dismiss in all other respects.

The plaintiffs filed their First Amended Complaint on April 25, 1997, adding five individual defendants who are executives of HIP, Advanced, and Arimed, and asserting allegations of their exclusion from the HIP network encompassing the Upper County Region.

## II. DISCUSSION

### A. *Fed.R.Civ.P. 12(b)(6) standard*

■ On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also IUE AFL—CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052–53 (2d Cir. 1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993); *see also International Audiotext Network, Inc. v. American Telephone and Telegraph Company*, 62 F.3d 69, 72 (2d Cir. 1995); *Paulemon v. Tobin*, 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels*, 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman*, 754 F.2d at 1067, and in doing so,

it is well settled that the Court must accept the allegations of the complaint as true, *see Leeds v. Meltz*, 85 F.3d 51 (2d Cir.1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 14 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Leeds, supra*, 85 F.3d at 51; *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings, shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (citing *Scheuer*, 416 U.S. at 235–36). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer*, 416 U.S. at 236).

▮ In addition, in antitrust cases, it must appear on the face of the complaint that the plaintiff could prove no set of facts to sustain a recovery. *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413 (5th Cir.1980). The complaint need only allege sufficient facts to state the elements of injury from an act prohibited by the antitrust laws. *Newman v. Universal Pictures*, 813 F.2d 1519 (9th Cir.1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988). On the other hand, for the court to grant this kind of motion, a defendant in an antitrust case must meet a more stringent standard because the proof is often in the hands of the alleged conspirators, and the plaintiff may need an opportunity to discover the facts necessary to withstand the motion. *HRM, Inc. v. Tele–Communications, Inc.*, 653 F.Supp. 645 (D.Colo.1987); *Hughes Automotive v. Mid–Atlantic Toyota Dist., Inc.*, 543 F.Supp. 1056 (D.Md.1982).

It is within this framework that the Court addresses the present motions to dismiss.

### B. *The defendants' motions*

#### 1. *Allegations of a conspiracy*

▮ To state a claim under section 1 of the Sherman Act, a plaintiff must allege: (1) concerted action, (2) by two or more persons that (3) unreasonably restrains trade. *See Discon, Inc., v. NYNEX Corp.*, 93 F.3d 1055, 1059 (2d Cir.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 49, 139 L.Ed.2d 14 (1997); *Brenner v. World Boxing Council*, 675 F.2d 445, 451 (2d Cir.), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982); *In re Nasdaq Market–Makers Antitrust Litigation*, 894 F.Supp. 703, 710 (S.D.N.Y.1995). The complaint "must identify the co-conspirators, and describe the nature and effects of the alleged conspiracy." *International Television Productions Ltd. v. Twentieth Century–Fox Television Division*, 622 F.Supp. 1532, 1537 (S.D.N.Y.1985). To measure the sufficiency of the plaintiffs' claim, the Court must determine whether the complaint "contains either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fort Wayne Telsat v. ESPN*, 753 F.Supp. 109, 111 (S.D.N.Y.1990) (citation omitted); *see also Brenner*, 675 F.2d at 451 ("Concerted action need not be proved directly, but can be based upon circumstantial evidence; for example, from inferences drawn from the words and conduct of the parties to the agreement and from their course of dealing").

In its prior opinion, the Court recognized that "a health maintenance organization has the right to determine the companies it chooses to recommend to its customers, if it does not do so as a result of an illegal conspiracy to restrain trade. Generally, an HMO 'has the right to recommend or refuse to recommend whatever company it likes, so

long as it does so independently.' " *Continental*, 956 F.Supp. at 373 (quoting *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)); see also *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025, 1030 (2d Cir.) (a manufacturer "is free to choose the type of mechanism through which he will distribute his goods and can designate certain sales representatives as his exclusive agents"), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979). Using the Court's previous opinion as ammunition, the defendants maintain that, once again, the plaintiffs have failed to allege the existence of an agreement. Although the plaintiffs allege that the exclusive provider arrangements were the product of a "conspiracy," the defendants contend that the plaintiffs continue to rely on the same conclusory allegations the Court previously found lacking. According to the defendants, rather than pleading facts, the plaintiffs rely on antitrust jargon to mischaracterize lawful conduct. The Court disagrees.

■ Although the plaintiffs do not plead facts which would provide direct evidence of a conspiracy, the Court finds that such allegations, if true, provide the requisite circumstantial evidence. The plaintiffs have alleged facts which, if true, would provide circumstantial evidence that the defendants adhered to an agreement that was designed to achieve an unlawful objective, namely, to insulate Advanced and Arimed from increased competition, to artificially restrict the supply of O & P services to HIP's patients, and to fix the prices Advanced and Arimed would charge for providing O & P services. The plaintiffs allege that HIP failed to follow its own internal procedures with regard to accepting bids from O & P providers and that Advanced and Arimed's qualifications were deficient. The plaintiffs also allege that the defendants violated every one of HIP's internal standards for O & P providers in the bidding, selection and administration processes of the Lower and Upper County Region contracts. *See* Am.Compl. ¶¶ 69–73. For example, the plaintiffs allege that "HIP did not engage in *any* pre-qualification of O & P providers to determine if they were suitable to participate in the bidding process," *see* Am.Compl.

¶ 73(b) (emphasis in original), which evaluation was allegedly required by HIP's internal Bid Standards, *see id.* ¶ 71.

On the other hand, the defendants assert that these allegations are insufficient, both factually and legally. The defendants maintain that the antitrust laws do not require that HIP select its O & P providers through a process of competitive bidding. *See National Society of Professional Engineers v. U.S.*, 435 U.S. 679, 694–95, 98 S.Ct. 1355, 1367, 55 L.Ed.2d 637 (1978) ("The Sherman Act does not require competitive bidding; it prohibits unreasonable restraints on competition."). They contend that it was HIP's exclusive prerogative to select the O & P providers with whom it would deal. *See United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). A corollary of a firm's right to select with whom it will deal is that, if it determines to solicit bids or proposals, it can select from whom it wishes to receive proposals. *See e.g., Brown v. Western Massachusetts Theatres, Inc.*, 288 F.2d 302, 304 (1st Cir.1961) ("... a departure from competitive bidding does not in itself constitute or prove a violation, and cannot be helpful to the plaintiff unless he can rationally relate it to other conduct by the alleged conspirators."); *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 635 (E.D.N.C. 1966) ("Plaintiff has inserted the idea that the lack of competitive bidding at all times is in fact evidence of a conspiracy. This Court disagrees."), *affd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968).

■ The Court finds that while HIP had no obligation to choose an O & P provider by means of competitive bidding, once HIP affirmatively and voluntarily decided to undertake such a procedure, allegations that the defendants subverted the competitive machinery so that Advanced and Arimed would be awarded the O & P contract as exclusive providers may provide circumstantial evidence of a conspiracy. Ignorance of its own internal written standards may provide an inference that HIP's rejection of the plaintiffs' request to submit bids in favor of Advanced and Arimed, was in furtherance of the

defendants' alleged illegal scheme. *See Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc.*, 996 F.2d 537, 545 (2d Cir.) ("Ignoring its own written standards in the case of [the plaintiff's] application for membership [in the defendant's association of member radiologists] strongly suggests the objection to that application based on appellant's geographic location may have been a sham."), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

The plaintiffs also allege irregularities in the identification of prospective bidders, namely, that HIP "excluded qualified O & P providers" and sent bid requests to only three out of "335 eligible candidates" in the Lower County Region. Am.Compl. ¶¶ 9, 73(a). Arimed and Advanced were allegedly selected exclusively even though they had a limited number of outlets and purportedly did not adequately service the region. Am. Compl. ¶ 73(g)–(k), (m). The plaintiffs further allege that "HIP itself tacitly, if not outwardly, conceded in a September 21, 1995 letter to New York State Senator Guy J. Velella that Advanced and Arimed would *not* be able to service all its HIP members." Am.Compl. ¶ 73(g) (emphasis in original). The defendants allegedly conspired to restrict output and fix prices. These allegations of discrepancies between HIP's standard and practice and the allegations as to the restrictions on output and the fixing of prices, if true, may provide circumstantial evidence in support of the plaintiffs' theory of a conspiracy.

In sum, viewing the totality of the plaintiffs' allegations, accepting these allegations as true, construing all inferences in favor of the plaintiffs, and bearing in mind the very stringent burden on a moving defendant in an antitrust case, the Court finds that the plaintiffs have alleged a conspiracy cause of action under section 1 of the Sherman Act. Therefore, the defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to sufficiently state a claim of conspiracy under section 1 of the Sherman Act, is denied.

### 2. *Market definition*

Initially, the Court notes that the defendants previously moved to dismiss the complaint based on the grounds that the plaintiffs had failed to allege a relevant product market. In its previous opinion, the Court had summarily deemed the defendants' contention to be without merit. Once again, the defendants move to dismiss the complaint for failure to allege a relevant product market. The Court will now reconsider this issue.

"In order to survive a motion to dismiss, a claim under Sections 1 and 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized." *Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 704 (S.D.N.Y.1997) (citations omitted). A complaint must allege a relevant product market in which the anticompetitive effects of the challenged activity can be assessed. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). A relevant product market includes all products reasonably interchangeable, determination of which requires consideration of cross-elasticity of demand. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

In the present case, the plaintiffs define the relevant product market as "O & P health care services to all HIP's enrollees" Am.Compl. ¶ 88. The relevant geographic market is defined as the Upper and Lower County Regions. *See id.* The defendants contend that a product market defined by a single firm's product-in this case, O & P referrals to IIIP's enrollees—fails as a matter of law and therefore, that the plaintiffs' claims should be dismissed for failure to define a necessary element of their antitrust claim. Memorandum of Law of Defendants Health Insurance Plan of Greater New York, Watson and Neek in Support of Their Motion to Dismiss the Amended Complaint at 15–17.

Although the plaintiffs cite to *Capital Imaging* in support of their assertion that a single firm's product can constitute a relevant product market, a closer examination of the case reveals otherwise. In *Capital Imaging*, 996 F.2d at 547, the plaintiff defined the relevant geographic market as a "100–mile radius of Albany, New York," and it

defined the relevant product market as "radiological services." The Second Circuit considered the market to be comprised of either (i) all HMO subscribers; or (ii) all insured patients. *Id.* Hence, the Second Circuit did not accept a market definition, such as the one the plaintiffs propose here, limited to the enrollees of a single defendant HMO.

█ In addition, the Court finds that the other cases cited by the plaintiffs do not support their contention. The plaintiffs cite *Key Enterprises of Delaware, Inc. v. Venice Hospital,* 919 F.2d 1550 (11th Cir.1990), *Advanced Health–Care Services, Inc. v. Radford Community Hospital,* 910 F.2d 139 (4th Cir.1990), and *M & M Medical Supplies and Service, Inc. v. Pleasant Valley Hospital, Inc.,* 981 F.2d 160 (4th Cir.). *cert. denied,* 508 U.S. 972, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993), for the proposition that the relevant product market in those cases consisted of durable medical equipment referrals stemming from a single hospital. First, the Court notes that *Key Enterprises* was vacated en banc by the Eleventh Circuit. *See Key Enterprises,* 979 F.2d 806 (11th Cir.1992). Then the case became moot when the parties settled. *See Key Enterprises of Delaware, Inc. v. Venice Hospital,* 9 F.3d 893 (11th Cir.1993). Second, upon review of the other two cases, the Court finds that each case demonstrates that a single hospital could be found to have market or monopoly power in its market and therefore, foreclosure of the plaintiff from the portion of the durable medical equipment market represented by referrals from that single hospital constituted a substantial foreclosure from the market of all durable medical equipment purchasers. In the present case, although the plaintiffs allege that HIP represents 20% of the HMO market, Am.Compl. ¶ 6, they also allege that HIP's enrollment has "plummeted by more than 30,000 from 1994 to 1995," *id.* ¶ 57, and that HIP's enrollees constitute 25% of the population of New York State, *id.* ¶ 60. However, the plaintiffs do not allege what percentage of the O & P market HIP possesses. Without this latter information, the Court is unable to assess whether the present case would be comparable to *Advanced Health–Care Services* and *M & M Medical Supplies.* It may be possible that although HIP represents only 20% of the HMO market, it represents a larger percentage of those using the services of O & P providers to warrant a factual similarity to *Advanced Health–Care Services* and *M & M Medical Supplies.* At this point in the litigation, the Court is unable to make this determination. However, one point is clear. The plaintiffs' alleged product market consisting of O & P health care services to all HIP's enrollees is not an economically viable product market.

However, our inquiry does not end here. The Second Circuit "has not made a showing of market power a prerequisite for recovery in all § 1 cases. If a plaintiff can show an actual adverse effect on competition, such as reduced output, we do not require a further showing of market power." *K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.,* 61 F.3d 123, 129 (2d Cir.1995) (citations omitted). "To prevail on a § 1 claim, [the] plaintiff[s] must demonstrate an adverse effect in competition among different sellers of the same product ('intrabrand' competition),...." *K.M.B. Warehouse Distributors,* 61 F.3d at 127. Then, "[b]ecause the focus of our inquiry is the relevant market as a whole, restriction of intrabrand competition must be balanced against any increases in interbrand competition." *Id.* at 128. "The overarching standard is whether defendants' actions 'diminish overall competition, and hence consumer welfare.'" *Id.*

In its prior decision, the Court held that the plaintiffs had adequately pled harmful effect on competition. *Continental,* 956 F.Supp. at 371–72. The plaintiffs must demonstrate an adverse effect in competition among different O & P providers for HIP enrollees. Since the restriction of intrabrand competition must be balanced against the effects on interbrand competition, the relevant product market cannot consist of merely HIP's O & P referrals. To this extent, the Court finds that the plaintiffs' definition of a relevant product market consisting of only O & P health care services to all HIP's enrollees, does not properly define a relevant product market.

The Court notes that in opposition to the defendants' previous motions to dismiss, the

plaintiffs requested an opportunity to replead the complaint should the defendants' motion be granted. If the Court had then granted the defendants' motions to dismiss with regard to the allegations of a relevant product market, the plaintiffs would have had an opportunity to replead those allegations. Since the Court granted, in effect, a reconsideration of the issue of whether the plaintiffs have adequately pleaded a relevant product market, the Court finds that fairness demands that the plaintiffs be afforded an opportunity to replead these allegations.

### 3. *Individual defendants*

■ Individual officers of corporations may be held liable under section 1 of the Sherman Act for conspiracies or combinations in restraint of trade where those conspiracies or combinations are with persons other than the corporations for whom they serve as officers. *See Eye Encounter, Inc. v. Contour Art, Ltd.,* 81 F.R.D. 683, 689 (E.D.N.Y.1979). In *State of New York v. Cedar Park Concrete Corp.,* 665 F.Supp. 238, 247–48 (S.D.N.Y.1987), Judge Sand held that the complaint adequately pled antitrust conspiracy against individuals by alleging conspiracy on part of their corporations, including corporations of which they were not officers, to rig bids on public construction projects and alleging that the individual defendants dominated and controlled the corporations as officers, directors, and principal stockholders, and alleging specific overt acts of some defendants.

Like *Cedar Park Concrete,* none of the individual defendants charged as co-conspirators in the present case are minor employees; Andrew H. Meyers was President and Chief Executive Officer of Advanced, Matthew and Steven Mironis were high Executive Officers and/or owners of Arimed, Bernard Neek was Chairman of HIP Hospitals, Anthony L. Watson was President and Chief Financial Officer of HIP. The First Amended Complaint pleads generally, and in some circumstances, specific facts, that the individual defendants held meetings at various times at which they agreed to rig bids, communicated with each other to carry out their illegal scheme, authorized and participated in the conspiracy, and allegedly communicated false information to the media. *See* Am.Compl. ¶¶ 54–56, 75. Under these circumstances and in light of the legal principles which govern the liability of conspirators, the case against the individual defendants is sufficiently pled and the Court declines to dismiss the complaint against the individual defendants. *See Cedar Park Concrete,* 665 F.Supp. at 248.

### 4. *Novacare*

The First Amended Complaint names Novacare Prosthetic and Orthotics, Inc. ("Novacare") as a defendant based upon the sole allegation, made upon information and belief that on or about December 1996, it purchased all the assets of Advanced. Novacare maintains that under settled rules of corporate and antitrust law, ownership alone does not afford a basis for holding a parent corporation liable for the actions of its subsidiary.

■ For the first time, the plaintiffs allege in paragraph 34 of the First Amended Complaint that "on or about November 1996, defendant Novacare purchased all of the shares of Advanced." This is the only allegation in the First Amended Complaint with regard to Novacare. In order to assert liability against Novacare, the plaintiffs maintain that "Novacare acquired all or substantially all of the assets of Advanced by way of merger, making Advanced its wholly-owned subsidiary and then expressly agreed to assume the liabilities of Advanced—which would, of necessity, include Advanced's liability for violating antitrust laws herein." Class Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint at 23. The plaintiffs request the Court to take judicial notice of the September 30, 1996 Agreement and Plan of Merger between and among Novacare and Advanced (the "Agreement"). The Court notes that this is the first time that the plaintiffs have mentioned the Agreement. The Agreement was not incorporated by reference into the First Amended Complaint and the plaintiffs do not cite to any case law which permits the Court to take judicial notice of a contract. Therefore, the Court declines to do so.

The Court finds that the plaintiffs have not satisfied the requirements of notice pleading with regard to Novacare. However, the plaintiffs request leave to amend their complaint so that they may "amend the complaint with regarding this narrow issue." *See id.* at 24. The Court grants the plaintiffs' request to amend the First Amended Complaint as to this issue.

## III. CONCLUSION

Having reviewed the parties' submissions and heard oral arguments, and for the reasons set forth above, it is hereby

**ORDERED,** that the defendants' motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim based on the relevant product market issue and as against the defendant Novacare Prosthetic and Orthotics, Inc., is **GRANTED without prejudice.** The plaintiffs are permitted to file a Second Amended Complaint with regard to the defendant Novacare Prosthetic and Orthotics, Inc. and the allegations regarding a relevant product market, within twenty (20) days from February 6, 1998, the date that this decision was orally rendered by the Court; and it is further

**ORDERED,** that the defendants' motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim, is **DENIED** in all other respects.

**SO ORDERED.**